

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEL MONTE FRESH PRODUCE N.A., INC., a )
Florida corporation, DEL MONTE FRESH )
PRODUCE COMPANY, a Delaware corporation, )
FRESH DEL MONTE PRODUCE INC., a Cayman )
Islands corporation, DEL MONTE FRESH )
PRODUCE INC., a California corporation, DEL )
MONTE FRESH PRODUCE (WEST COAST), )
INC., a Delaware corporation, and DEL MONTE )
FRESH PRODUCE (FLORIDA) INC., a Florida ) Civil Action No.: 06 C 1658
corporation, )
 ) Suzanne B. Conlon, Judge
        Plaintiffs, )
 )
  v. )
 )
TRANSPORTATION INSURANCE COMPANY, )
an Illinois corporation, )
 )
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Del Monte Fresh Produce N.A., Inc. and its affiliates[1] (collectively "Del Monte") sued Transportation Insurance Company for declaratory judgment regarding Transportation's duty to defend under a commercial general liability insurance policy. The parties cross-move for summary judgment. Del Monte also moves to strike Transportation's unauthenticated exhibits and affidavit in support of its cross-motion. For the reasons set forth below, Del Monte's motions to strike and for partial summary judgment are denied, and Transportation's cross-motion for summary judgment is granted.

---

[1] The affiliates include Del Monte Fresh Produce Company, Fresh Del Monte Produce Inc., Del Monte Fresh Produce Inc., Del Monte Fresh Produce (West Coast), Inc., and Del Monte Fresh Produce (Florida) Inc.

**BACKGROUND**

The following facts are undisputed. Transportation is an insurer with its principal place of business in Chicago. Def. Facts at ¶ 7. Del Monte maintains offices in California and Florida. *Id.* at ¶¶ 1-6. The parties consent to this court's jurisdiction and venue. *Id.* at ¶¶ 7-8.

**I.   The Policy**

This case arises from a commercial general liability insurance policy (number 102523344) Transportation issued to a Del Monte affiliate. The policy covers "advertising injury" and "personal injury" incurred between December 31, 1995 and December 31, 1996:

> COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY
>
> 1.   Insuring Agreement.
>
>     a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. . . .
>
>     b.   This insurance applies to:
>
>         (1)   "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you; [and]
>
>         (2)   "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services[.]

Pls. Facts Ex. 1 at 12. The policy defines "advertising injury" and "personal injury" as follows:

> 1.   "Advertising injury" means injury arising out of one or more of the following offenses:
>
>     a.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  b. Oral or written publication of material that violates a person's right to privacy;

  c. Misappropriation of advertising ideas or style of doing business; or

  d. Infringement of copyright, title or slogan.

. . .

13. "Personal injury" means injury, other than "bodily injury[,"] arising out of one or more of the following offenses:

  a. False arrest, detention or imprisonment;

  b. Malicious prosecution;

  c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

  d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

  e. Oral or written publication of material that violates a person's right to privacy.

*Id.* at 17. The policy excludes from coverage all injuries arising from Del Monte's intentional conduct:

> This insurance does not apply to:
>
> a. "Personal injury" or "advertising injury":
>
>   (1) Arising out of oral or written publication of material, if done by or at the direction of the insured *with knowledge of its falsity*; [or]
>
>   . . .
>
>   (3) Arising out of the *willful violation of a penal statute* or ordinance committed by or with the consent of the insured . . . .

*Id.* (emphasis supplied).

3

## II. The Underlying Antitrust Actions

In 2004, a series of class actions were filed against Del Monte for fraud and antitrust violations. These cases arose from Del Monte's marketing of Fresh Del Monte Gold™ pineapples. Def. Facts at ¶ 15. According to the complaints, Del Monte applied for a patent on a genetic sibling to the Gold pineapple, known as Calvin Oda or "CO-2," in 1994. *See, e.g., id.* at ¶¶ 22-25. In its application, Del Monte allegedly misrepresented that the CO-2 pineapple was extra-sweet and therefore differed from other varieties. *Id.* After obtaining the CO-2 patent, Del Monte allegedly sent letters to competitors and customers, threatening litigation against anyone seeking to market extra-sweet pineapple. *Id.* In addition, Del Monte allegedly spread its threats through newspapers and trade publications. *E.g.*, Pls. Facts at ¶¶ 19, 23. Del Monte also sued two competitors – Dole Food Company and Maui Land and Pineapple Company – for patent infringement. Def. Facts at ¶¶ 22-25. Through these alleged efforts, Del Monte monopolized the extra-sweet pineapple market until 2002, when it withdrew the CO-2 patent and settled the infringement lawsuits. *Id.*; Pls. Facts at ¶¶ 15-16. Alleging injuries resulting from the monopoly, Del Monte's customers filed the following class actions:

- *American Banana Co., Inc. et al. v. Del Monte Fresh Produce Co. et al.*, No. 03 CV 10230 (S.D.N.Y.);

- *J. Bonafede Co., Inc. et al. v. Del Monte Fresh Produce Co., et al.*, No. 1:04-705 (D. Mass.);

- *Just-A-Mere Trading Co., LLC et al. v. Del Monte Fresh Produce Co. et al.*, No. 04 CV 1687 (S.D.N.Y.);

- *Freed et al. v. Del Monte Fresh Produce Co. et al.*, No. 04 CV 1950 (S.D.N.Y.);

- *Meijer, Inc. et al. v. Del Monte Fresh Produce Co. et al.*, No. 04 CV 2406 (S.D.N.Y.);

- *Schwam et al. v. Del Monte Fresh Produce Co. et al.*, No. 04 CV 2526 (S.D.N.Y.);

4

- *In re Pineapple Antitrust Litig.*, No. 1:04-MD-1628 (S.D.N.Y.) (multi-district litigation);

- *In re Fresh Del Monte Pineapples Antitrust Litig.*, 03 CV 10230 (S.D.N.Y.);

- *Churosh et al. v. Fresh Del Monte Produce Co. N.A., Inc. et al.*, No. CV2004-8384 (Super. Ct., Maricopa County, Ariz.);

- *Barry et al. v. Del Monte Fresh Produce Co. et al.*, No. A-488218 (Dist. Ct., Clark County, Nev.);

- *Williams et al. v. Del Monte Fresh Produce Co. et al.*, No. 04-0682 (Cir. Ct., Davidson County, Tenn.);

- *Linden et al. v. Fresh Del Monte Produce, Inc. et al.*, No. BC 312347 (Super. Ct., L.A. County, Cal.);

- *Weiss et al. v. Del Monte Fresh Produce (West Coast) Inc. et al.*, No. BC 313162 (Super. Ct., L.A. County, Cal.);

- *Conroy et al. v. Fresh Del Monte Produce, Inc. et al.*, No. RG 04146298 (Super. Ct., Alameda County, Cal.) (consolidated); and

- *Vassilatos et al. v. Del Monte Fresh Produce Co. et al.*, No. 50 2004 CA 4066 MB (Cir. Ct., Palm Beach County, Fla.).

Def. Facts at ¶¶ 17-20; *see also* Pls. Facts Exs. 6-19. The class plaintiffs claimed Del Monte committed fraud in marketing extra-sweet pineapples, and violated the Sherman Act, 15 U.S.C. § 2 *et seq.*, as well as state trade statutes and common law. *Id.*

Each complaint alleged Del Monte intentionally deceived the public and the United States Patent and Trademark Office. *E.g.*, Pls. Facts Ex. 6 at ¶¶ 32-35. In describing Del Monte's alleged conduct, the complaints employed similar terms such as "deception," "fraud," "misrepresentation," "scheme," and "sham." *See* Def. Additional Facts at ¶¶ 45-60. For example, the complaint in *In re Fresh Del Monte Pineapples Antitrust Litigation* alleged:

5

- "[Del Monte] launched a *scheme* to unlawfully and unfairly prevent competitors from producing and selling [Gold] variety pineapples," Pls. Facts Ex. 12 at ¶ 46 (emphasis supplied);

- "Del Monte *intentionally and fraudulently misrepresented and omitted* material information in its application to the [Patent and Trademark Office] for the CO-2 patent," *id.* at ¶ 51 (emphasis supplied);

- "[Del Monte] engaged in a *campaign of threats and sham litigation* to exclude competitors from the market for the Gold pineapple," *id.* at ¶ 64 (emphasis supplied);

- "Del Monte *fraudulently concealed* the existence of the antitrust violations," *id.* at ¶ 96 (emphasis supplied); and

- "[Del Monte] acted with *specific intent* to achieve an anticompetitive purpose," *id.* at ¶ 132 (emphasis supplied).

None of the complaints alleged or implied any negligent conduct. *See* Def. Additional Facts at ¶¶ 45-60; *see also* Pls. Facts Exs. 6-19.

### III. The Present Case

Seeking insurance coverage for these class actions, Del Monte filed claims with Transportation. *See* Def. Facts at ¶¶ 39-44. But Transportation denied Del Monte's claims on two bases: (1) these class actions did not arise from "advertising injury" or "personal injury" under the policy; and (2) the class actions were excluded from coverage because they alleged fraud. Pls. Facts Ex. 5. Del Monte filed this case for declaratory judgment regarding Transportation's liability under the policy. Del Monte moved for partial summary judgment one month after filing the complaint. Dkt. No. 21 (Apr. 24, 2006). After limited discovery, Transportation cross-moved for summary judgment. Dkt. No. 44 (July 7, 2006). Del Monte also moved to strike Transportation's unauthenticated exhibits and affidavit. Dkt. No. 63 (July 27, 2006).

# DISCUSSION

## I. Summary Judgment Standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A movant has the initial burden of demonstrating its entitlement to summary judgment. *Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Once a movant has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Cont'l Cas. Co.*, 427 F.3d at 1041. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *Id.* A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Duty to Defend

### A. Choice of Law

Because jurisdiction over this case rests entirely on diversity under 28 U.S.C. § 1332(a), the court must apply Illinois choice of law rules. *Smurfit Newsprint Corp. v. Southeast Paper Mfg.*, 368 F.3d 944, 949 (7th Cir. 2004). Choice of law considerations enumerated by the Illinois Supreme Court are: "the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the [policy]." *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 655 N.E.2d 842, 845 (Ill. 1995) (quoting *Hofeld v. Nationwide Life Ins. Co.*, 322 N.E.2d 454, 458 (Ill. 1975)). Before engaging in a choice of law analysis, the court should

determine whether application of relevant state law would produce different results. *Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir. 1994). The court applies Illinois law when the law of other contact states are in harmony. *Id.*

The parties primarily rely on Illinois law and cite only a few cases from Florida, where Del Monte maintains offices. *See* Pls. Facts Venue (the underlying policy "was issued [and performed] in this district"). For the most part, they agree that Illinois and Florida law produces the same result. They part company on only one relevant issue: whether the underlying complaints allege Del Monte disparaged its competitors' products. *See In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 611 n.13 (7th Cir. 1981) (choice of law is made separately for each issue). But the parties' disagreement is illusory because as explained in Section II(C) below, they fail to show a conflict between Illinois and Florida law. Accordingly, Illinois law governs. *Jean*, 20 F.3d at 260.

### B. Illinois Standard of Construction

To determine whether an insurer owes a duty to defend, "the court must look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1079 (Ill. 1993). The court must liberally construe the allegations in the underlying complaint, and resolve any doubt in the insured's favor. *See Ill. State Med. Ins. Servs., Inc. v. Cichon*, 629 N.E.2d 822, 826 (Ill. 1994). Accordingly, the court must find for the insured, if the facts alleged in the underlying complaint fall within, or even potentially within, the policy's coverage. *Crum & Forster*, 620 N.E.2d at 1079.

Del Monte argues the underlying class action complaints arise out of "personal injury" and "advertising injury" allegedly resulting from its marketing of extra-sweet pineapples. As a result,

8

Del Monte seeks to hold Transportation liable for defending these class actions. Transportation denies that the class actions allege any wrongdoing covered under the policy. Alternatively, Transportation argues the policy's knowledge of falsity clause excludes coverage. The parties' arguments are addressed in turn.

C.   **Personal Injury**

Transportation's policy covers "personal injury" resulting from any "oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Pls. Facts Ex. 1 at 12, 17. Coverage is triggered if the underlying class action complaints allege Del Monte defamed its competitors or disparaged their goods. Under Illinois law, falsely accusing a competitor of patent infringement constitutes defamation. *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 728-29 (7th Cir. 2004); *see also Amerisure Ins. Co. v. Laserage Tech. Corp.*, 2 F. Supp. 2d 296, 304 (W.D.N.Y. 1998) (Siragusa, J.) (applying Illinois law) ("wrongfully asserting that a competitor's product infringes patents clearly defames the competitor and disparages his product"). "Disparagement," on the other hand, is defined as "words [that] criticize the quality of one's goods or services." *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1225 (Ill. App. Ct. 1st Dist. 2001) (citing cases). To find disparagement, "there must be statements about a competitor's goods which are . . . made to influence or tend to influence the public not to buy." *Id.* (internal brackets omitted).

The underlying complaints allege Del Monte engaged in defamation and disparagement. Each complaint alleges Del Monte sent letters to competitors threatening litigation for marketing extra-sweet pineapples. Pls. Facts Ex. 6-19; Def. Facts at ¶¶ 22-37. Del Monte's threats materialized into two patent infringement suits. *Id.* According to the complaints, Del Monte

9

launched a campaign to declare its pineapples were sweeter than those of its competitors, and that competitors would infringe the CO-2 patent if they marketed extra-sweet pineapples. *See id.* In describing Del Monte's alleged campaign, the complaints in *Weiss, Williams,* and *Vassilatos* employ the term "disparage." Pls. Facts at ¶¶ 18-19, 22. In addition, according to the complaints in *American Banana, J. Bonafede, In re Fresh Del Monte Pineapples Litigation, Schwam, Linden, Weiss,* and *Vassilatos,* Del Monte accused its competitors of "stealing" its proprietary information. Pls. Additional Facts at ¶¶ 48-59. These allegations trigger "personal injury" coverage under Transportation's policy. *See, e.g., Pekin Ins. Co. v. Phelan,* 799 N.E.2d. 523, 526-27 (Ill. App. Ct. 3d Dist. 2003) (finding disparagement where the insured allegedly misrepresented that her competitor's business was shutting down); *BASF AG v. Great Am. Assurance Co.,* No. 04 C 6969, 2006 WL 1235943, at *12 (N.D. Ill. May 8, 2006) (Deryeghiayan, J.) (the underlying complaints "arose out of what could reasonably be deemed disparaging, defamatory, and libelous statements"); *Sun Elec. Corp. v. St. Paul Fire & Marine Ins. Co.,* No. 94 C 5846, 1995 WL 270230, at *4 (N.D. Ill. May 4, 1995) (Castillo, J.) (the insured allegedly labeled its competitor as a "newcomer" to the trade).

Arguing the contrary, Transportation points to the absence of the terms "disparage" and "steal" in some of the underlying complaints. But Transportation's duty to defend does not "hinge exclusively on the [underlying plaintiffs'] draftsmanship." *Cincinnati Ins. Co. v. E. Atl. Ins. Co.,* 260 F.3d 742, 746 (7th Cir. 2001). Transportation's duty arises so long as the underlying allegations "fall potentially within the policy's coverage." *Id.* (citing cases). Because a finding of coverage does not require the underlying allegations to contain "language affirmatively bring[ing] the claims within the scope of the policy," Transportation's argument must fail. *Id.*

Transportation relies on two distinguishable cases: *Lexmark* and *Practice Management Associates, Inc. v. Old Dominion Insurance Co.*, 601 So. 2d 587 (Fla. 1st Dist. Ct. App. 1992). In *Lexmark*, the insured engaged in litigation with its competitor over the ownership of a printer design. *Lexmark*, 761 N.E.2d at 1218. The underlying trade secret complaints alleged the insured stole a competitor's design, but did not allege the insured referred to the competitor's products. *Id.* at 1225. The absence of comments about the competitor's products compelled the conclusion that the insured did not engage in disparagement. *Id.* In contrast, each underlying complaint here alleges that Del Monte threatened its competitors with litigation, and publicly accused competitors of patent infringement. Def. Facts at ¶¶ 45-60. Because the underlying complaints clearly allege defamation and disparagement, *Lexmark* is inapplicable.

Transportation's reliance on *Practice Management* is perplexing. *Practice Management* interprets the term "unfair competition" in an insurance policy that provides no coverage for disparagement. *Practice Mgmt.*, 601 So. 2d at 588. Transportation does not show how *Practice Management* sheds any light on the interpretation of disparagement. Nor does Transportation explain how *Practice Management* conflicts with Illinois law for choice of law purposes. *See Jean*, 20 F.3d at 260 (forum law governs absent real conflict). Accordingly, *Practice Management* offers Transportation no aid. Because Transportation's argument lacks legal support, the policy's "personal injury" coverage extends to the underlying complaints.

D.  **Advertising Injury**

In addition to "personal injury," Transportation's policy covers "advertising injury" resulting from any "oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Pls. Facts Ex. 1 at 17. To fall

11

under "advertising injury," the underlying class action complaints must allege (1) Del Monte engaged in advertising activity; (2) Del Monte disparaged its competitors' goods; and (3) Del Monte's conduct injured the underlying plaintiffs. *Winklevoss Consultants, Inc. v. Fed. Ins. Co.*, 991 F. Supp. 1024, 1031 (N.D. Ill. 1998) (Castillo, J.); *accord State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004) (applying Florida law) (same).

Each underlying complaint alleges Del Monte monopolized the extra-sweet pineapple market through deception and intimidation. Def. Facts at ¶¶ 22-37. Del Monte's monopoly allegedly injured the underlying plaintiffs. *Id.* Accordingly, the parties do not dispute the underlying complaints satisfy *Winklevoss*' third requirement. And as discussed above, the underlying complaints also meet *Winklevoss*' second requirement by alleging disparagement and defamation. The only remaining question is whether the underlying allegations of Del Monte's conduct constitute "advertising activity." *Winklevoss*, 991 F. Supp. at 1031.

Under Illinois law, "advertising" refers to "the widespread distribution of promotional material to the public at large." *Int'l Ins. Co. v. Florists' Mut. Ins. Co.*, 559 N.E.2d 7, 10 (Ill. App. Ct. 4th Dist. 1990). Accordingly, publicizing disparaging statements about a competitor's product may constitute advertising for insurance coverage purposes. *E.g.*, *Knoll Pharm. Co. v. Auto. Ins. Co.*, 152 F. Supp. 2d 1026, 1036 (N.D. Ill. 2001) (Castillo, J.) (finding advertising activities where an insured allegedly concealed information "through marketing and advertising designed to convince the public of" its superiority). For example, in *Sun*, this court held an underlying complaint arose from "advertising injury" because the insured allegedly publicized it had unequaled expertise in the industry, and that its competitor lacked experience. *Sun*, 1995 WL 270230, at *5.

12

Similar to *Knoll* and *Sun*, Del Monte allegedly disseminated disparaging information about its competitors. Def. Facts at ¶¶ 22-37. In furtherance of its alleged "campaign of misinformation," Del Monte told customers that it was the only company authorized to market extra-sweet pineapples. *E.g.*, Pls. Facts ¶¶ 17-18, 20 23. In addition, Del Monte allegedly sent letters to its competitors threatening patent infringement litigation. *Id.*; *see also* Pls. Facts at ¶ 20. The complaints in *Just-A-Mere*, *Williams*, and *Conroy* specifically allege Del Monte used newspapers and trade publications to spread its threats. *Id.* at ¶¶ 19, 23; Pls. Additional Facts at ¶ 51. Viewed liberally, Del Monte's alleged efforts to publicly disparage its competitors' pineapples inevitably promoted its extra-sweet pineapples. *See Erie Ins. Group v. Sear Corp.*, 102 F.3d 889, 894 (7th Cir. 1996) (applying Indiana law) ("[a]ctions taken 'in the course of advertising' must involve actual, affirmative self-promotion of the actor's goods or services"); *see also Flodine v. State Farm Ins. Co.*, No. 99 C 7466, 2001 WL 204786, at *10 (N.D. Ill. Mar. 1, 2001) (Gottschall, J.) (finding advertising injury where the insured "implicitly involve[d] in advertising activity"). This conclusion finds further support in Transportation's admission that Del Monte's alleged conduct publicized its exclusive right to sell pineapples of "superior quality." Def. Reply Br. at 8; *see also Crum & Forster*, 620 N.E.2d at 1079 (duty to defend arises even if the allegations may potentially fall within the underlying policy's coverage). Because Del Monte engaged in self-promotion in its alleged efforts to stifle competition, the underlying complaints allege advertising activities. *E.g.*, *Knoll*, 152 F. Supp. 2d at 1036.

To bolster its argument that all underlying class actions arose from the same "advertising activities," Del Monte urges the court to look beyond the underlying complaints, and submits

13

discovery materials from an underlying class action.[2] Because the underlying complaints sufficiently demonstrate Del Monte engaged in "advertising activities," the court need not review the discovery materials. *See Lexmark*, 761 N.E.2d at 1222 (declining to look beyond the four corners of the underlying complaint). Nor need the court reach Del Monte's meritless alternative argument that the underlying complaints allege "misappropriation of advertising ideas."[3]

In summary, the court concludes the underlying class action complaints fall within the "personal injury" and "advertising injury" coverage of Transportation's policy. The court's inquiry, however, does not end at this conclusion. Transportation owes no duty to defend Del Monte in the underlying class actions if the policy's knowledge of falsity clause excludes coverage.

E.   **Exclusion**

Transportation's policy excludes from coverage any injury "[a]rising out of oral or written publication of material, if done by or at the direction of [Del Monte] with knowledge of its falsity."[4] Pls. Facts Ex. 1 at 17. Consistent with the rule to resolve all doubts in Del Monte's favor, this exclusion may obviate Transportation's duty to defend only if the underlying class action complaints

---

[2] The court notes with disapproval that Del Monte's submission, styled as a "request for judicial notice," was filed without leave of court. Dkt. No. 57 (July 14, 2006).

[3] Under the policy, "advertising injury" encompasses injury resulting from "misappropriation of advertising ideas." Pls. Facts Ex. 1 at 17. Under Illinois law, "misappropriation" means copying a competitor's business style. *Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 733 (7th Cir. 2006). Because the underlying complaints lack allegations that Del Monte copied its competitors' marketing ideas, Del Monte's alleged efforts to bar its competitors from marketing extra-sweet pineapples do not constitute "misappropriation." *See id.* Del Monte has no coverage under a "misappropriation" theory.

[4] Without any factual or legal support, Del Monte argues the knowledge of falsity clause applies only to personal injury, but not to advertising injury. Pls. Reply Br. at 14. This argument conflicts with the policy language and must therefore be rejected.

allege no negligent conduct. *Connecticut Indem. Co. v. Der Travel Serv., Inc.*, 328 F.3d 347, 350 (7th Cir. 2003). In other words, if the underlying complaints allege any facts giving rise to recovery for negligence, the exclusion does not apply. *Id.*

Whether the exclusion applies depends on the allegations in the underlying complaints, and not on the underlying legal theories. *Id.* The inquiry therefore turns on whether the underlying plaintiffs alleged negligence, not whether they could recover based on negligence. In *Connecticut*, a consumer sued a car rental company alleging the company schemed to charge higher rental taxes. *Id.* at 348. The company's insurer refused to defend the company on the basis that the underlying consumer fraud action alleged willful conduct and was therefore excluded from coverage under a knowledge of falsity clause. *Id.* In a declaratory judgment action between the company and its insurer, the Court of Appeals sided with the insurer because the underlying complaint alleged only that the company "*deceived, schemed,* and *defrauded* consumers." *Id.* at 350 (emphasis supplied). The Court of Appeals rejected the company's argument that the underlying plaintiff "could have asserted a negligence claim," reasoning that "it is the actual complaint, not some hypothetical version, that must be considered." *Id.* at 350-51.

The consumer fraud complaint in *Connecticut* mirrors the underlying class action complaints here. The terms "deceive," "fraud," and "scheme" are common in the underlying complaints. *E.g.*, Pls. Facts Ex. 6 at ¶¶ 32-35 (describing "Del Monte's scheme to defraud . . . the public"); Def. Additional Facts at ¶¶ 45-60. For example, the complaint in *In re Fresh Del Monte Pineapples Antitrust Litigation* alleges Del Monte "launched a *scheme*" to monopolize the extra-sweet pineapple market," "*intentionally* . . . misrepresented" information in its patent application, and "fraudulently *concealed*" its antitrust violations. Pls. Facts Ex. 12 at ¶¶ 46, 51, 96 (emphasis supplied). These

15

quoted phrases "are the paradigm of intentional conduct and the antithesis of negligent actions." *Connecticut*, 328 F.3d at 351. While replete with allegations of intentional conduct, the underlying complaints are barren of any references to negligence or mistake. *See* Pls. Facts Ex. 6-19. The absence of allegations of negligent conduct is hardly surprising because antitrust violations require proof of intent. *See Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs.*, Inc., 43 F.3d 1119, 1123 (7th Cir. 1994) (commenting that "antitrust violations [are] based on deliberate rather than inadvertent actions"). Because the underlying complaints consistently couch the allegations in terms of intentional deception, they are excluded from coverage under the policy's knowledge of falsity clause. *Connecticut*, 328 F.3d at 350; *see also Steadfast Ins. Co. v. Caremark Rx, Inc.*, 835 N.E.2d 890, 900-01 (Ill. App. Ct. 3d Dist. 2005) (exclusion applies where the underlying complaint made clear that the insured engaged in a scheme to defraud); *accord Wackenhut Servs., Inc. v. Nat'l Union Fire Ins. Co.*, 15 F. Supp. 2d 1314, 1321 (S.D. Fla. 1998) (King, J.) (applying Florida law) (same).

Arguing the contrary, Del Monte relies on three distinguishable cases: *Cincinnati*, 260 F.3d at 742, *Utica Mutual Insurance Company v. David Agency Insurance Inc.*, 327 F. Supp. 2d 922 (N.D. Ill. 2004) (Kennelly, J.), and *Stanislawski v. Jordan*, Nos. 03 C 1022, 04 C 0516, 2006 WL 482397 (E.D. Wis. Feb. 28, 2006) (Randa, C.J.) (applying Wisconsin law). None of these cases involve an underlying complaint alleging a fraudulent scheme. In *Cincinnati* and *Utica*, the underlying complaints gave rise to a negligence claim. *Cincinnati*, 260 F.3d at 746 (allegation of intentional conduct was "a pitch for punitive damages . . . and merely . . . the icing on the cake"); *Utica*, 327 F. Supp. 2d at 927 (the underlying complaint allowed plaintiffs to recover without a finding of deliberateness). Similarly, the underlying complaint in *Stanislawski* alleged the insured made "erroneous" statements, implying negligence. *Stanislawski*, 2006 WL 482397, at *4. Because

16

the underlying complaints here differ from those in *Cincinnati*, *Utica*, and *Stanislawski*, Del Monte's reliance on these cases is misplaced.

Del Monte fails to raise a genuine issue of material fact as to the applicability of the knowledge of falsity clause. Thus, summary judgment for Transportation is appropriate. Transportation's alternative arguments based on the doctrine of fortuity, policy period, and lack of timely notice are moot.

## III. Motion to Strike

In support of its cross-motion for summary judgment, Transportation submitted exhibits to demonstrate Del Monte failed to file a timely claim for six underlying class actions. But Transportation failed to authenticate these exhibits in compliance with Fed. R. Civ. P. 56(e) and Local Rule 56.1(b). Without leave of court, Transportation submitted an affidavit to authenticate the exhibits two weeks later. Dkt. No. 61 (July 21, 2006). Del Monte moves to strike the unauthenticated exhibits and the belated affidavit. While Transportation failed to comply with procedural rules, the court has not relied on any unauthenticated exhibits in resolving the cross-motions for summary judgment. Because Del Monte suffered no prejudice, its motion to strike is denied. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006) (enforcement of local rules falls within the court's discretion); *see also Case v. Midwestern Sports Med. & Orthopaedic Surgical Specialists, Ltd.*, No. 04 C 3650, 2005 WL 3470290, at *2 (N.D. Ill. Dec. 15, 2005) (Lefkow, J.) (denying motion to strike for lack of prejudice).

## CONCLUSION

For the reasons set forth above, Del Monte's motions for partial summary judgment and to strike Transportation's unauthenticated exhibits and affidavit are denied. Transportation's cross-motion for summary judgment is granted.

ENTER:

_Suzanne B. Conlon_
Suzanne B. Conlon
United States District Judge

August 8, 2006